UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
CORALYS NEGRON and                )    CIVIL ACTION NO.
FRANCISCO NEGRON,                 )
    Plaintiffs                          )
                                           )
v.                                           )
                                           )
PATRIOT AUTO SALES, LLC AND   )
JASON WINER,                          )
    Defendants                         )
_____)    APRIL 10, 2017

## **COMPLAINT**

### I.  **INTRODUCTION**

1.    This is an action brought by a consumer against an automobile dealership for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. §§ 36a-770 *et seq.,* and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*

### II.  **PARTIES**

2.    Plaintiff Coralys Negron is a consumer residing in Derby, Connecticut.

3.    Plaintiff Francisco Negron is a consumer residing in Derby, Connecticut, and he is the brother of Coralys Negron.

4.    Defendant, Patriot Auto Sales, LLC ("Patriot Auto"), is a Connecticut limited liability company and is licensed to operate an automobile dealership at a location in Bridgeport, Connecticut.

5.      Defendant, Jason Winer ("Winer"), is an individual and a resident of Connecticut.

### III.   JURISDICTION

6.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1640 and Fed. R. Civ. P. 18(a).

7.      This Court has jurisdiction over Patriot Auto because it is located in Connecticut and is organized under Connecticut law.

8.      This Court has jurisdiction over Winer because he resides in this State.

9.      Venue in this Court is proper because all of the parties are located in this state.

### IV.   FACTUAL ALLEGATIONS

10.     Some time prior to October, 2016, Patriot Auto and Winer entered into an arrangement pursuant to which Winer would operate a car dealership ostensibly as Patriot Auto, even though Winer made all operational decisions, invested in inventory, and would either profit or lose money depending upon the success of the operation.

11.     Patriot Auto maintained no supervisory role in Winer's operations and had no economic interest in the transactions entered into by Winer other than the consideration paid by Winer for permitting him to operate a dealership at Patriot Auto's location.

12.     Winer did not have a license to operate a dealership and operated his business in Patriot Auto's name and under Patriot Auto's license.

13.     Patriot Auto permitted Winer to operate in its name even though it knew that Winer did not have a license to operate a motor vehicle dealership.

14.   Winer and Patriot Auto subsequently discontinued this arrangement, and Patriot Auto now permits a different, unlicensed third party to operate a dealership at its location.

15.   On or about October 26, 2016, during the time that Winer was operating at Patriot Auto's location, Coralys Negron saw an advertisement for a 2008 Subaru Impreza (the "Vehicle") on Facebook for a sale price of $8,500.

16.   Coralys Negron went to Patriot Auto's location on or about October 27, 2016 and she met with Winer, who identified himself as the owner of Patriot Auto and who was acting in Patriot Auto's name.

17.   Coralys Negron told Jason she was willing to overlook the condition of the outside of the Vehicle as long as the engine was good and did not have any major issues.

18.   Winer assured Coralys Negron that the Vehicle's engine was in good condition.

19.   Based on this representation, Coralys Negron paid a down payment of $2,000 to Winer, and she completed a credit application to finance the balance of the purchase price.

20.   Winer prepared a handwritten Purchase Order that indicated a cash price of $8,995.00 and included the $2,000 down payment paid by Coralys Negron.

21.   Winer later informed Coralys Negron that he could not obtain approval of her credit application and that she was required to obtain a cosigner.

22.   Francisco Negron agreed to co-sign for the loan, and WIner was able to obtain credit approval from United Consumer Finance ("UCF").

3

23.     On or about November 8, 2016, Winer met the Plaintiffs at their home to obtain their signatures on Retail Installment Contract (the "Contract") that listed the Plaintiffs as the Buyers and Patriot Auto as the Seller/Creditor.

24.     The Contract provided that the cash price of the Vehicle, including the sales tax of $590.17, was $9,585.17, which was consistent with the $8,995 cash price stated in the initial purchase order.

25.     The Contract also contained other charges and fees.

26.     In the itemization of the amount financed, the Contract credited the Plaintiffs with a down payment of only $1,000, even though $2,000 had been paid.

27.     This resulted in an amount financed of $9,423.17.

28.     Patriot Auto and Winer failed and neglected to provide Plaintiffs with a copy of the Contract and did not provide them with any of the disclosures required under 15 U.S.C. § 1638.

29.     The Contract was assigned to UCF.

30.     Coralys Negron subsequently took delivery of the Vehicle.

31.     Soon after she took delivery, Coralys Negron discovered that the Vehicle was very low on oil.

32.     Coralys Negron called Winer, who told her it was "normal" for Subaru's to burn oil, and he instructed her to refill the oil and drive the Vehicle for a week.

33.     Approximately one week after Coralys Negron added oil to the Vehicle, she had a mechanic check the oil levels and discovered that the Vehicle was again very low on oil.

34.   On or about November 25, 2016, Coralys Negron called Winer, and she told him she did not want to keep the Vehicle because the engine was bad, and he instructed her to bring the Vehicle to a Subaru dealership for inspection.

35.   On or about November 30, 2016, Coralys Negron brought the Vehicle to Dan Perkins Subaru, who determined that the turbo feed line was leaking oil, the engine had a knocking noise, the struts were leaking and needed to be replaced, and the air conditioner was making noise.  Dan Perkins gave Coralys Negron an estimate of $6,700 to tear down the engine and make repairs.

36.   On March 9, 2017, Plaintiffs, by their attorney, sent written notice to Patriot Auto that they had revoked acceptance of the Vehicle due to breach of warranty or alternatively, elected to rescind the contract due to violations of RISFA.  Plaintiffs notified Patriot Auto that they could retrieve the Vehicle, which can no longer be driven.

37.   Patriot Auto, or the individual currently operating at its location, forwarded the notice to Winer, who received actual notice of the claim.

38.   Neither Winer nor Patriot Auto have refunded to Plaintiffs the $2,000 down payment.

39.   Plaintiffs have restored the defendants, as nearly as possible, to their pre-contractual position by tendering

## V.  CAUSES OF ACTION

### A.  TRUTH IN LENDING ACT
### (as to Patriot Auto)

33.   Patriot Auto is a "Creditor" within the meaning of the Truth in Lending Act.

34.   Patriot Auto charged more for the Vehicle than the advertised price, both by utilizing a cash price that was greater than the advertised amount and by failing to apply the full down payment to the purchase.

35.   Some or all of the increased price was added as an incident to the extension of credit because UCF, a subprime lender, charged a fee to accept assignment of the contract.

36.   This increased price would not have been charged in a comparable cash transaction to purchase the vehicle.

37.   Patriot Auto also violated TILA by failing to provide Plaintiffs with a copy of the Contract, which contained the required truth in lending disclosures, on the date the documents were signed in a form they could keep, by failing to accurately itemize the amount financed by including the full down payment, and by improperly including the increased cost of the vehicle as part of the amount financed and not including it in the finance charge.

38.   Patriot Auto is liable to Plaintiffs for actual damages plus additional statutory damages of $2,000 and attorney's fees and costs.

### B.  TRUTH IN LENDING ACT
### (as to Winer)

39.   Winer, acting in Patriot Auto's name, is a "Creditor" within the meaning of the Truth in Lending Act.

40.    Winer charged more for the Vehicle than the advertised price, both by utilizing a cash price that was greater than the advertised amount and by failing to apply the full down payment to the purchase.

41.   Some or all of the increased price was added as an incident to the extension of credit because UCF, a subprime lender, charged a fee to accept assignment of the contract.

42.   This increased price would not have been charged in a comparable cash transaction to purchase the vehicle.

43.   Winer also violated TILA by failing to provide Plaintiffs with a copy of the Contract, which contained the required truth in lending disclosures, on the date the documents were signed in a form they could keep, by failing to accurately itemize the amount financed by including the full down payment, and by improperly including the increased cost of the vehicle as part of the amount financed and not including it in the finance charge.

44.   Winer is liable to Plaintiffs for actual damages plus additional statutory damages of $2,000 and attorney's fees and costs.

## C.  BREACH OF WARRANTY
### (Patriot Auto & Winer)

45.   This Count is asserted under Magnuson-Moss for breach of the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314

46.   Patriot Auto is a "merchant" as that term is defined in Conn. Gen. Stat. § 42a-2-104.

47.   The Vehicle constitutes "goods" as that term is defined in Conn. Gen. Stat. § 42a-2-105.

48.   A warranty that the Vehicle was in merchantable condition was implied by law in the sale of the Vehicle to Plaintiffs pursuant to Conn. Gen. Stat. § 42a-2-314.

49.   Patriot Auto and Winer have breached the implied warranty of merchantability, because the Vehicle was not in merchantable condition at the time of sale to Plaintiffs and was not fit for the ordinary purpose for which cars are used. Specifically, the Vehicle's engine was burning oil and was defective.

50.   Plaintiffs revoked their acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608 and provided notice to Patriot Auto and to Winer.

51.   For Patriot Auto and Winer's breach of the implied warranty of merchantability, Plaintiffs are entitled to an order that they have validly and effectively revoked acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608, a refund of the $2,000 down payment, plus attorney's fees and costs pursuant to MMWA, 15 U.S.C. § 2310(d).

## D.  BREACH OF EXPRESS WARRANTY
### (Patriot Auto and Winer)

52.   Patriot Auto is a "merchant" as that term is defined in Conn. Gen. Stat. § 42a-2-104.

53.   The Vehicle constitutes "goods" as that term is defined in Conn. Gen. Stat. § 42a-2-105.

54.    Winer's statements regarding the condition of the Vehicle constituted an express warranty pursuant to Conn. Gen. Stat. § 42a-2-313.

55.   Patriot Auto and Winer have breached the express warranty because the Vehicle had a defective engine at the time of sale.

56.   Plaintiffs revoked their acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608 and provided notice to Patriot Auto and to Winer.

33.   The breach of express warranty was knowing, reckless, and tortious in nature, entitling Plaintiffs to common law punitive damages.

34.   For Patriot Auto and Winer's breach of the express warranty, Plaintiffs are entitled to an order that they have validly and effectively revoked acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608, and a refund of the $2,000 down payment.

35.   The breach of express warranty was knowing, reckless, and tortious in nature, entitling Plaintiffs to common law punitive damages.

### E.  RETAIL INSTALLMENT SALES FINANCE ACT
### (as an alternative to the revocation of acceptance claim)
### (Patriot Auto and Winer)

36.   By inaccurately listing the amount paid for a down payment, failing to accurately state the amount financed, and by failing to identify Winer as the true original party to the Contract, Patriot Auto and Winer violated RISFA, Conn. Gen. Stat. §36a-771(a), which requires that all essential provisions of the contract be included in the Retail Installment Contract.

37.   Through its violations of TILA, as pled above, and by failing to provide Plaintiffs with a copy of the Contract, Patriot Auto further violated RISFA, which incorporates the requirements of TILA by operation of Conn. Gen. Stat. § 36a-771(b).

38.   Plaintiffs have offered to restore Patriot Auto and Winer to their pre-contractual position by tendering the return of the Vehicle to them.

39.   Plaintiffs are entitled to a rescission of the Contract due to the violations of RISFA and a return of the $2,000 down payment paid for the Vehicle.

## F.  CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (Patriot Auto and Winer)

40.   Patriot Auto and Winer have violated CUTPA as follows:

a.      The violations of TILA and RISFA as aforedescribed;

b.      The operation of an unlicensed dealership by Winer under the auspices of Patriot Auto's license with Patriot Auto's knowledge and consent.

c.      The failure to credit Plaintiffs' full down payment to the transaction;

d.      The failure to provide Francisco Negron with written notice of his rights and obligations as a cosigner as required by the Federal Trade Commission's Credit Practices Rule.

e.      The sale of the vehicle for more than the advertised price, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1), which prohibits dealerships from failing to sell vehicles for the advertised price.

f.      The misrepresentation of the condition of the Vehicle, a violation of Conn. Gen. Stat. § 42-225, a *per se* violation of Conn Agency Reg. § 42-110b-28(b)(23), which establishes the violation of any state or federal regulation regarding the sale of motor vehicles as an unfair trade practice.

41.   Plaintiffs have suffered ascertainable losses of money or property in that they were obligated to pay a greater debt to UCF, they have lost their $2,000 down payment, and they have lost the use of the Vehicle and they were hindered in their ability to obtain another due to the retention of the down payment amount and the debt that was claimed by UCF.

42.   The defendants are liable to the Plaintiffs for their actual damages plus punitive damages and a reasonable attorney's fee and costs.

43.   Plaintiffs seek rescission of the contract as an equitable remedy under

CUTPA.

Wherefore, Plaintiffs claim actual damages, statutory damages of $2,000; statutory and common law punitive damage, and attorney's fees and costs; revocation of acceptance of the Vehicle or, alternatively, an order rescinding the contract, and a return of the down payment.

PLAINTIFFS, CORALYS NEGRON and
FRANCISCO NEGRON

By: /s/ *Daniel S. Blinn*_____
    Daniel S. Blinn (ct02188)
    dblinn@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax (860) 571-7457