UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CORALYS NEGRON and ) <br> FRANCISCO NEGRON, ) <br>     Plaintiffs ) <br> ) <br> v. ) <br> ) <br> PATRIOT AUTO SALES, LLC AND ) <br> JASON WINER, ) <br>     Defendants ) <br> ) | CIVIL ACTION NO. <br> 3:17-CV-00583-JCH <br><br><br><br><br><br><br><br> JUNE 9, 2017 |

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT

The Plaintiffs, Coralys Negron and Francisco Negron, by their attorney, submit this memorandum of law in support of her motion for judgment against Patriot Auto Sales, LLC ("Patriot") following entry of default for failure to plead, which was granted by the Court against Patriot on May 11, 2017.

### I.    INTRODUCTION

This is an action for damages brought against Patriot, an automobile dealer, for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), Breach of Warranty, and violations of the Connecticut Retail Installment Sales Finance Act, Conn. Gen. Stat. § 36a-770 *et seq.* ("RISFA") and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b *et seq.* ("CUTPA"). Plaintiffs' claims arise from the purchase and sale of an automobile. Default entered on May 11, 2017 for Patriot's failure to plead.

## II.     STANDARD OF REVIEW

In *GE Group Life Assurance Company v. Ruzynski*,[1] the principles applicable to entry of a judgment following default were well-summarized as follows:

> It is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court.[2] In civil cases, however, "where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party."[3]

In deciding the extent of damages to be awarded in a default judgment, the court must consider several factors including (1) the monetary award requested; (2) the prejudice suffered by the Plaintiffs; (3) whether or not the default is clearly established and (4) the nature of the Plaintiffs' claims against the defendant.[4]

With respect to the above criteria, the Second Circuit has provided some guidance, stating:

> The outer bounds of recovery allowable are of course measured by the principle of proximate cause. The default judgment did not give [Plaintiffs] a blank check' to recover from [defendant] any losses it had ever suffered from whatever source. It could only recover those damages arising from the acts and injuries pleaded....[5]

However, in making this determination and evaluating the allegations asserted against the defendant, the court may "deem[ ] all the well-pleaded allegations in the

---

[1] 2004 WL 243346 (D. Conn. 2004).
[2] *Id.* citing *Cablevision of S. Conn. Ltd. Partnership v. Smith*, 141 F.Supp.2d 277, 281 (D. Conn. 2001) (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir.1999)).
[3] *Id.* citing *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir.1984).
[4] *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1152 n. 11 (2d Cir. 1995) (citing 10 Moore's Federal Practice § 55.20[2][b]).
[5] *Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158-59 (2d Cir. 1992).

pleadings to be admitted" by the defendant.[6] In addition to the facts alleged in the Complaint, Plaintiff Coralys Negron has submitted an affidavit in support of her motion for judgment, the facts of which are set forth below. Further, Defendant Jason Winer filed an answer which largely corroborates the factual allegations set forth in the complaint.

### III. PLAINTIFFS' FACTUAL ALLEGATIONS

The following allegations are set forth in the Complaint and are deemed to be admitted by Patriot.

At some time prior to October, 2016, defendant Jason Winer entered into an arrangement with Patriot whereby he would operate the dealership in his own capacity under Patriot's name and dealership license. Complaint, ¶¶ 10-12; See also Answer of Defendant Jason, Doc No. 12, May 15, 2017 ("Winer Answer"), ¶¶ 10-12. Winer made all operational decisions, invested in inventory, and all profits and losses would inure to him. Patriot did not supervise Winer, but had full knowledge that he was operating under its auspices. Complaint, ¶ 13. Winer and Patriot have since discontinued this relationship. Id., ¶ 14. The Winer Answer corroborates these allegations. Winer Answer, ¶¶ 10-14.

After viewing an advertisement on Facebook for a 2008 Subaru Impreza (the "Vehicle") offer for sale at Patriot for $8,500 on or about October 26, 2016, Plaintiff Coralys Negron ("Coralys") went the next day to Patriot's 1565 Park Avenue location in Bridgeport. Complaint, ¶¶ 15-16 Coralys met Winer, who identified himself as the owner of Patriot and acted on its behalf. Coralys Negron told Winer she was willing to overlook

---

[6] *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997).

3

the condition of the outside of the Vehicle as long as the engine was good and did not have any major issues. Id., ¶ 17. Winer assured Coralys that the Vehicle's engine was in good condition. Id., ¶ 18; Winer Answer, ¶¶ 17-18.

Coralys paid a down payment of $2,000 to Winer, and she completed a credit application to finance the balance of the purchase price. Winer prepared a handwritten Purchase Order that indicated a cash price of $8,995.00 and included the $2,000 down payment paid by her. Complaint, ¶¶ 19-20; Winer Answer, ¶¶ 19-20.

Winer later informed Coralys Negron that he could not obtain approval of her credit application and that she was required to obtain a cosigner. Francisco Negron agreed to co-sign for the loan, and Winer was able to obtain credit approval from United Consumer Finance ("UCF").[7] Complaint, ¶¶ 21-22; Winer Answer, ¶¶21-22. On or about November 8, 2016, Winer met the Plaintiffs at their home to obtain their signatures on a retail installment sales contract (the "Contract") that listed the Plaintiffs as the Buyers and Patriot as the Seller/Creditor. Complaint, ¶ 23. The Contract provided that the cash price of the Vehicle, including the sales tax of $590.17, was $9,585.17, which was consistent with the $8,995 cash price stated in the initial purchase order. Complaint, ¶¶ 23-34; Winer Answer, ¶¶ 23-24.

In the itemization of the amount financed, the Contract credited the Plaintiffs with a down payment of only $1,000, even though $2,000 had been paid. This resulted in an amount financed of $9,423.17. Complaint, ¶¶ 26-27; Winer Answer, ¶¶ 26-27. Patriot Auto charged more for the Vehicle than the advertised price, both by utilizing a cash price that was greater than the advertised amount and by failing to apply the full down

---

[7] Plaintiffs have settled the claims against UCF, the assignee of the retail installment sales contract. See Declaration of Daniel S. Blinn.

4

payment to the purchase. Complaint, ¶34. Some or all of the increased price was added as an incident to the extension of credit because UCF, a subprime lender, charged a fee to accept assignment of the contract. This increased price would not have been charged in a comparable cash transaction to purchase the vehicle. Complaint, ¶¶ 35-36; Winer Answer, ¶41-42. Patriot and Winer failed to provide Plaintiffs with a copy of the Contract and did not provide them with any of the disclosures required under 15 U.S.C. § 1638. Complaint, ¶ 28. The Contract was assigned to UCF. Id., ¶ 29; Winer Answer, ¶29.

Soon after she took delivery, Coralys discovered that the Vehicle was very low on oil. Complaint, ¶ 31. Coralys called Winer, who told her it was "normal" for Subarus to burn oil, and he instructed her to refill the oil and drive the Vehicle for a week. Complaint, ¶ 32; Winer Answer, ¶ 32. Approximately one week after Coralys added oil to the Vehicle, she had a mechanic check the oil levels and discovered that the Vehicle was again very low on oil. Complaint, ¶ 33.

On or about November 25, 2016, Coralys called Winer, and she told him she did not want to keep the Vehicle because the engine was bad, and he instructed her to bring the Vehicle to a Subaru dealership for inspection. Complaint, ¶ 34; Winer Answer, ¶ 34. On or about November 30, 2016, she brought the Vehicle to Dan Perkins Subaru, who determined that the turbo feed line was leaking oil, the engine had a knocking noise, the struts were leaking and needed to be replaced, and the air conditioner was making noise. Dan Perkins gave Coralys an estimate of $6,700 to tear down the engine and make repairs. Complaint, ¶ 35.

On March 9, 2017, Plaintiffs, by their attorney, sent written notice to Patriot that they had revoked acceptance of the Vehicle due to breach of warranty or alternatively, elected to rescind the contract due to violations of RISFA. Plaintiffs notified Patriot that they could retrieve the Vehicle, which can no longer be driven. Complaint, ¶ 36. Neither Winer nor Patriot have refunded to Plaintiffs the $2,000 down payment. Complaint, ¶¶ 37-38; Winer Answer, ¶¶ 37-38.

## IV.   PLAINTIFFS' LEGAL CLAIMS

### A. Truth in Lending Act

TILA is a remedial, strict liability statute that is to be liberally construed, and it requires no proof of deception or actual damages to obtain relief thereunder.[8] Any defects in the disclosure process, even technical defects, must be recognized without requiring any proof that the consumer was confused.[9]  When multiple violations of TILA are present, a Plaintiff may not recover multiple instances of statutory damages.

Patriot charged more for the Vehicle than the advertised price, both by utilizing a cash price that was greater than the advertised amount and by failing to apply the full down payment to the purchase. Some or the entire increased price was added as an incident to the extension of credit because UCF, a subprime lender, charged a fee to accept assignment of the contract. This increased price would not have been charged in a comparable cash transaction to purchase the vehicle and it was not disclosed that this increased price was a finance charge.

---

[8] *Purtle v. Eldridge Auto Sales*, 91 F.3d 797, 800 (6th Cir. 1996); *McGowan v. King, Inc.*, 569 F.2d 845, 848-49 (5th Cir. 1978); *Redhouse v. Quality Ford Sales, Inc.*, 523 F.2d 1, 2 (10th Cir. 1975) (en banc).
[9] *See Jenkins v. Landmark Mortgage Corp.*, 696 F. Supp. 1089, 1092, 1095 (W.D. Va. 1988) (citing *Powers v. Sims and Levin*, 542 F.2d 1216, 1219 (4th Cir. 1976)).

TILA's purpose is to ensure the accurate and meaningful disclosure of the cost of consumer credit and to enable consumers to make informed choices in the credit marketplace. Our Supreme Court noted in *Mourning v. Family Publication Services, Inc.*[10] that unscrupulous merchants might attempt to circumvent TILA's objectives by "burying the cost of credit in the price of the goods sold". The Court gave an example of how a merchant might attempt to avoid the disclosure requirements:

> Two merchants might buy watches at wholesale for $20 which normally sell at retail for $40. Both might sell immediately to a consumer who agreed to pay $1 per week for 52 weeks. In one case, the merchant might claim that the price of the watch was $40 and that the remaining $12 constituted a charge for extending credit to the consumer. From the consumer's point of view, the credit charge represents the cost which he must pay for the privilege of deferring payment of the debt he has incurred. From the creditor's point of view, much simplified, the charge may represent the return which he might have earned had he been able to invest the proceeds from the sale of the watch from the date of the sale until the date of payment. The second merchant might claim that the price of the watch was $52 and that credit was free. The second merchant, like the first, has forgone the profits which he might have achieved by investing the sale proceeds from the day of the sale on. The second merchant may be said to have 'buried' this cost in the price of the item sold. By whatever name, the $12 difference between the total payments and the price at which the merchandise could have been acquired is the cost of deferring payment.

The Supreme Court noted that the Federal Reserve Board promulgated regulations (Regulation Z) in order to prohibit this well documented practice against a legislative background acknowledging this concern. Reg. Z addresses the burying of a "finance charge" as part of the "cash price" by its definition of these terms. Cash price is defined as:

> The price at which a creditor, in the ordinary course of business, offers to sell for cash the property or service that is the subject of the transaction. At the creditor's option, the term may include the price of accessories, services related to the sale, service contracts and taxes and fees for license, title, and registration. The term does not include any finance charge.

---

[10] *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 366 (1973).

7

"Finance charge" is defined broadly in Reg. Z to include both direct and indirect amounts paid as an incident to or a condition of the extension of credit. Reg Z., § 226.4(a), provides as follows:

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

The regulatory scheme therefore requires sellers to separate the cash price of goods sold on credit from charges that are imposed as an incident of the extension of credit and that are not charged in a comparable cash transaction; those charges must be disclosed as finance charges.

Patriot violated TILA because they increased the purchase price and only applied half of the $2,000 as a down payment. These increases were incidental to the extension of credit and would not have occurred in a comparable cash transaction. However, they were not disclosed as finance charges. Further, the itemization of the financing of the transaction was false.

Patriot also violated TILA by failing to provide Plaintiffs with the disclosures mandated by 15 U.S.C. § 1638. TILA § 1638 provides that, in non-open ended credit transactions (such as the transaction in the instant case), the creditor must disclose the identity of the creditor required to make the disclosures, the amount financed, a statement of the consumer's right to obtain a written itemization of the amount financed, the finance charge, the APR, the total of payments, the number, amount and due dates or period of payments scheduled to repay the total payments, as well as make other

disclosures.[11] Regulation Z, which interprets TILA, further mandates that the disclosures required by 15 U.S.C. § 1638 must be made "clearly and conspicuously in writing, in a form that the consumer may keep."[12]

As described above, Winer acted at all times as Patriot's representative with Patriot's knowledge and consent. Patriot was the named creditor on the retail installment sales contract, and it was therefore the creditor within the meaning of TILA. See 15 U.S.C. § 1602(g)(2) (definition includes person "to whom the debt arising from the consumer credit transaction is initially payable on the face of evidence of indebtedness"). Although Winer obtained Plaintiffs signatures on the Contract containing disclosures, he never provided copies to the Plaintiffs. Since Plaintiffs were not provided with a copy, Patriot failed to provide the TILA-mandated disclosures required under 15 U.S.C. § 1638.

Patriot is liable under 15 U.S.C. § 1640(a) for statutory damages of double the finance charge, but not less than $200 and no more than $2,000. In this case, the finance charge was $3,366.43, Affidavit of Coralys Negron, ¶ 11, so maximum statutory damages of $2,000 are recoverable.

### B. Breach of Implied Warranty

Plaintiffs asserted this count under Magnuson-Moss for breach of the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314. Patriot is a "merchant" as that term is defined in Conn. Gen. Stat. § 42a-2-104. The Vehicle constitutes "goods" as that term is defined in Conn. Gen. Stat. § 42a-2-105. A warranty that the Vehicle was in merchantable condition was implied by law in the sale of the Vehicle to Plaintiffs

---

[11] 15 U.S.C. § 1638.
[12] 12 C.F.R. 226.17(a)

pursuant to Conn. Gen. Stat. § 42a-2-314. Because the Vehicle was burning oil and defective at the time of purchase, Patriot breached the implied warranty of merchantability. The Vehicle was not fit for the ordinary purpose for which cars are used. Under Connecticut law, the facts as alleged and admitted by Patriot in default prove the elements of breach of the implied warranty of merchantability: "Under [General Statutes] § 42a–2–314,2 the warranty of merchantability is implied in any sale of goods by a merchant seller ... To recover under this section, a plaintiff must prove (1) that a merchant sold goods, (2) which were not merchantable at the time of sale, and (3) injury and damages to the plaintiff or his property (4) [were] caused proximately and in fact by the defective nature of the goods, and (5) [that] notice [was given] to the seller of injury." (Internal quotation marks omitted.) [13]

"When a buyer justifiably revokes acceptance, he may cancel and recover so much of the purchase price as has been paid." [14]

> Section 42a-2-608 of the General Statutes sets up the following conditions for the buyer who seeks to justify revocation of acceptance: (1) a nonconformity which substantially impairs the value to the buyer; (2) acceptance (a) with discovery of the defect, if the acceptance is on the reasonable assumption that the nonconformity will be cured, or (b) without discovery of the defect, when the acceptance is reasonably induced by the difficulty of the discovery or the seller's assurances; (3) revocation within a reasonable time after a nonconformity was discovered or should have been discovered; and (4) revocation before a substantive change occurs in the condition of the goods not caused by their own defects. *Id.*

As stated above, Plaintiffs met all the requirements of the revocation. (1) The defective engine completely impaired value to Plaintiffs; (2) Winer's statements regarding the engine's good condition induced purchase; (3) revocation was made

---

[13] *Nassar v. Wiz Leasing, Inc.*, No. NNHCV126033894S, 2013 WL 4734851, at *4 (Conn. Super. Ct. Aug. 12, 2013).
[14] *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 120 (1976).

within a reasonable period after defect in the engine was discovered; and (4) a substantive change had not occurred in the condition of the Vehicle. As such, Plaintiffs revoked their acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608 and provided notice to Patriot and to Winer. Plaintiffs are entitled to an order that they have validly and effectively revoked acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608, a refund of the $2,000 down payment, plus attorney's fees and costs pursuant to MMWA, 15 U.S.C. § 2310(d).

### C. Breach of Express Warranty

Patriot is a "merchant" as that term is defined in Conn. Gen. Stat. § 42a-2-104. The Vehicle constitutes "goods" as that term is defined in Conn. Gen. Stat. § 42a-2-105. Winer's statements regarding the condition of the Vehicle constituted an express warranty pursuant to Conn. Gen. Stat. § 42a-2-313. Patriot breached the express warranty because the Vehicle had a defective engine at the time of sale and Winer, acting on Patriot's behalf, expressly stated that Vehicle's engine was in good condition. Such statement was an affirmation of fact that became part of the basis of the bargain. Coralys stated that she was willing to overlook any external cosmetic issues with the Vehicle as long as the engine was good.

> (1) Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description ... (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but the affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a

warranty.[15]

Patriot's statement regarding the engine induced Coralys to buy the Vehicle, but it burned oil, making it unusable, from the time of purchase. Patriot is liable for its breach.

Plaintiffs revoked their acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608 and provided notice to Patriot Auto and to Winer. Therefore, they are entitled to an order stating that they had validly and effectively revoked their acceptance. Plaintiffs reincorporate their argument regarding revocation from the previous subsection here.

### D. Retail Installment Sales Finance Act

By inaccurately listing the amount paid for a down payment, failing to accurately state the amount financed, and by failing to provide Plaintiffs with a copy of the Contract, Patriot violated RISFA, Conn. Gen. Stat. §36a-771(a). That subsection, requires that all essential provisions of the contract be included in a retail installment contract, and it further requires that a copy of the contract be delivered to the buyers at the time that they sign the contract.. Additionally, the above described TILA violations constitute a RISFA violation, as the federal act is incorporated by reference pursuant to Conn. Gen. Stat. § 36a-771(b).

Consumers may claim a rescission as a remedy for violation of RISFA.[16] The Vehicle was tendered to Patriot, thereby restoring it to its pre-contractual position as nearly as possible.  For Patriot's RISFA violations, Plaintiffs is entitled to a return of all amount paid to Patriot, or $2,000.

---

[15] *Goldwater v. Ollie's Garage,* No. 357372, 1998 WL 83144, at *2–3 (Conn. Super. Ct. Feb. 18, 1998) citing Conn. Gen. Stat. § 42a-2-313.
[16] *See e.g., Barco Auto Leasing v. House,* 202 Conn. 106, 113 (1987).

The rescission remedy sought by Plaintiffs is an alternative theory of recovery that would result in ostensibly the same relief as sought in the revocation claim, i.e., cancellation of the contract and return of the down payment.

### E. Connecticut Unfair Trade Practices Act

It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the [F]ederal [T]rade [C]ommission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons].... All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.... Thus a violation of CUTPA may be established by showing either an actual deceptive practice ... or a practice amounting to a violation of public policy.... In order to enforce this prohibition, CUTPA provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice....

*Ulbrich v. Groth*, 310 Conn. 375, 409–10, 78 A.3d 76, 100 (2013)

As described above, Patriot violated CUTPA in six distinct ways:

(1) The violations of TILA and RISFA as aforedescribed;

(2) The operation of an unlicensed dealership by Winer under the auspices of Patriot's license with Patriot's knowledge and consent.

(3) The failure to credit Plaintiffs' full down payment to the transaction;

(4) The failure to provide Francisco Negron with written notice of his rights and obligations as a cosigner as required by the Federal Trade Commission's Credit Practices Rule.

>   (5) The sale of the vehicle for more than the advertised price, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1), which prohibits dealerships from failing to sell vehicles for the advertised price.
>
>   (6) The misrepresentation of the condition of the Vehicle, a violation of Conn. Gen. Stat. § 42-225, a *per se* violation of Conn Agency Reg. § 42-110b-28(b)(23), which establishes the violation of any state or federal regulation regarding the sale of motor vehicles as an unfair trade practice.

Plaintiffs suffered an ascertainable loss of money or property in that they were obliged to pay a greater debt to UCF, the paid $495 more than the advertised price, they lost their $2,000 down payment, they lost use of the Vehicle and they were hindered in their ability to obtain another vehicle due to the retention of their down payment and the debt claimed by UCF.

## V.   PUNITIVE DAMAGES

Punitive damages are available to Plaintiffs under CUTPA. Punitive damages and reasonable attorney's fees are authorized under CUTPA, but there is no prescribed multiplier.[17] In order to award punitive damages the "evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights."[18] The rights available to consumers (and the Plaintiffs) under CUTPA and TILA are well established and Patriot's actions in violation thereof were reckless and wanton.

"[T]he plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law... [including] punitive damages and attorney's fees. Section 42– 110g does not specify how punitive

---

[17] Conn. Gen. Stat. § 42-110g.
[18] *Tessmann v. Tiger Lee Construction Co.*, 228 Conn. 42, 54 (1993)

14

damages are to be measured; however, the award should serve the broad remedial goals of eliminating or discouraging unfair methods of competition and unfair or deceptive acts or practices."[19] The United States Supreme Court has held that excessive punitive damages can violate the Due Process Clause, see *State Farm Mutual Automobile Ins. Co. v. Campbell*,[20] but did not impose a strict limit upon what the outer limit of a damages multiplier could be.

In *Mathias v. Accor Econ. Lodging, Inc.*[21], a 37x multiplier was sought for knowingly renting rooms in motels that had bedbug infestations. "The award of punitive damages in this case thus serves the additional purpose of limiting the defendant's ability to profit from its fraud by escaping detection and (private) prosecution. If a tortfeasor is ' caught' only half the time he commits torts, then when he is caught he should be punished twice as heavily in order to make up for the times he gets away." *Id.*

Connecticut courts have recognized this aim of punitive damages as well. In *Larobina v. Home Depot USA, Inc.*,[22] the appellate court upheld a 10x multiplier when compensatory damages were only $100 on the theory that "CUTPA is aimed at eliminating or discouraging unfair methods of competition and unfair or deceptive acts or practices. To achieve that result, CUTPA seeks to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts. Encouraging claimants to walk away from unfair or deceptive practices does not serve to help enforce the ban on unfair trade practices and prevents CUTPA from achieving

---

[19] (Internal citations and quotation marks omitted.) *Societa Bario E. Derivati v. Kaystone Chem., Inc.*, No. 5:90-CV-599 (EBB), 1998 WL 182563, at *10 (D.Conn. 1998)
[20] 538 U.S. 408, 123 S.Ct. 1513, 1524, 155 L.Ed.2d 585 (2003)
[21] 347 F.3d 672, 677 (7th Cir. 2003)
[22] 76 Conn.App. 586 (2003)

the remedial effect which the legislature desired."[23]

This approach has been similarly recognized in *Bridgeport Harbour Place I, LLC v. Ganim*, 131 Conn. App. 99, 149 (2011) (6x multiplier); *Benham v. Wallingford Auto Park, Inc.*, No. CV020459418S, 2003 WL 22905163, at *5 (7x multiplier); *Odell v. Wallingford Mun. Fed. Credit Union*, No. CV106012228S, 2013 WL 4734783, at *45 (3x punitive damages under CUPTA on top of 3x civil theft multiplier); *All American Custom Pools,* supra. ($1 compensatory damages and $25,000 punitive damages).

Patriot's conduct was especially egregious in this case. In addition to its myriad TILA violations and selling a vehicle that it knew had catastrophic engine damage, it permitted its dealership to be operated illegally by an individual who did not possess a license. Punitive damages would serve as a strong deterrent to prevent future conduct of this nature.

In light of the forgoing, a punitive damages award in the amount of $10,000 is justified.

## VIII.   DAMAGES SUMMARY

| | |
|---|---|
| TILA statutory Damages | $2,000.00 |
| Return of Down Payment: | $2,000.00 |
| CUTPA actual damages | $495.00 |
| Punitive damages under CUTPA | $10,000.00 |

(duplicative damages under separate theories of liability are not included)

| | |
|---|---|
| Total Damages | $14,495.00 |

---

[23] *Id.* at 596.

## IX.  CONCLUSION

Patriot should be deemed liable for $2,000 in statutory damages pursuant to TILA, $2,000 in total actual damages pursuant to RISFA, $495 in actual damages under CUTPA, punitive damages under CUTPA in the amount of $10,000. Plaintiffs should also be granted stating that acceptance was validly revoked, or in the alternative, an order granting rescission of the contract.  Plaintiffs also seeks an order for post judgment interest pursuant to Conn. Gen. Stat. § 37-3a at the rate of 10%.

PLAINTIFFS, CORALYS and
FRANCISCO NEGRON,

By: /s/ *Brendan Mahoney*
Daniel Blinn, Esq. (ct02188)
dblinn@consumerlawgroup.com
Brendan Mahoney. Esq. (ct29839)
bmahomey@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd, Suite 512
Rocky Hill, CT  06067-9997
Tel (860) 571-0408
Fax (860) 571-7457

## CERTIFICATION

    I hereby certify that on this 9th day of June, 2017, a copy of foregoing Memorandum in Support of Motion for Judgment was filed electronically and served by mail on anyone unable to accept electronic filing, as listed below. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Patriot Auto Sales, LLC
1565 Park Ave
Bridgeport, CT

Lauren Winer-Beck
30 Ferry Boulevard Unit 2
Stratford, CT 06615
*Counsel for Jason Winer*

                                                */s/ Brendan Mahoney*
                                                Brendan Mahoney