**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CORALYS NEGRON and | : | |
| FRANCISCO NEGRON, | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:17-CV-00583 (JCH) |
| | : | |
| v. | : | |
| | : | |
| PATRIOT AUTO SALES, LLC and | : | JANUARY 7, 2019 |
| JASON WINER, | : | |
| Defendants. | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 33) & MOTION FOR SUMMARY
JUDGMENT (DOC. NO. 64)**

**I.     INTRODUCTION**

The plaintiffs, Coralys Negron ("Coralys") and Francisco Negron ("Francisco")

(collectively, "the plaintiffs"), bring this action against the defendants, Patriot Auto Sales

("Patriot") and Jason Winer ("Winer"), in connection with the sale of a used car.  See

generally Complaint ("Compl.") (Doc. No. 1).  In their Amended Complaint, the plaintiffs

allege that the defendants violated the Truth in Lending Act, 15 U.S.C. §§ 1601 et. seq.,

as well as various Connecticut state laws relating to breach of warranty, retail

installment contracts, civil forgery, and unfair trade practices.  See Amended Complaint

("Am. Compl.") (Doc. No. 32) at 1, ¶ 1.

On November 6, 2017, Winer moved to dismiss the plaintiffs' state law claim for

civil forgery.  See Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 33).  On November

20, however, the parties reported that the action had been settled.  See Order of

Dismissal (Doc. No. 45).  The court therefore terminated the pending Motion to Dismiss

and administratively closed the case without prejudice to reopening on or before

February 20, 2018.  Id.  On February 16, 2018, the parties requested that the deadline

for reopening the case be extended in order to provide Winer with more time to pay the plaintiffs the agreed upon settlement amount.  See Motion to Open Order of Dismissal (Doc. No. 47).  Several such extensions were given to Winer.  See, e.g., Order (Doc. No. 50) (extending payment deadline to May 9); Order (Doc. No. 53) (extending payment deadline to May 29).  However, when Winer still had not tendered the full settlement amount to the plaintiffs by July 27, 2018, the court reopened the case.  Order (Doc. No. 60).

Shortly thereafter, the plaintiffs filed an Objection to Winer's Motion to Dismiss, even though the Motion had already been terminated and Winer had not renewed his Motion after the re-opening of the case.  See Plaintiffs' Memorandum in Opposition to Motion to Dismiss ("Pls.' Opp'n in Mot. to Dismiss") (Doc. No. 62).  Winer, in turn, filed a Reply in support of his Motion to Dismiss on August 22.  See Reply to Plaintiffs' Memorandum in Opposition to Motion to Dismiss ("Defs.' Reply in Mot. to Dismiss") (Doc. No. 63).  In light of these submissions, it appears to be the parties' understanding that Winer's Motion to Dismiss is still pending before the court.  As such, the court will address both Winer's Motion to Dismiss and his Motion for Summary Judgment ("Mot. for Summ. J.") (Doc. No. 64), which he filed on August 23, 2018.

For the reasons set forth below, Winer's Motion to Dismiss (Doc. No. 33) and his Motion for Summary Judgment (Doc. No. 64) are both denied.

## II.    BACKGROUND

As a preliminary matter, the court notes that neither party has submitted detailed statements of facts in connection with Winer's Motion for Summary Judgment.  See Defs.' Local Rule 56(a)1 Statement of Undisputed Facts ("Defs.' L.R. 56(a)1") (Doc. No. 64) at 2–3; Pls.' Local Rule 56(a)2 Statement of Facts in Opposition to Summary

Judgment ("Pls.' L.R. 56(a)2") (Doc. No. 67-1).  The court therefore relies on the plaintiffs' Amended Complaint in order to provide context and background for the legal analyses that follow.  However, it should not be inferred from the court's reliance on the Amended Complaint that the court also relied on the Amended Complaint in its summary judgment analysis.  The court is well aware that it must apply different standards of review to Winer's Motion to Dismiss and his Motion for Summary Judgment.  See, infra, at 5–7 (reviewing the standards of review for motions to dismiss and motions for summary judgment).

The Amended Complaint asserts the following factual allegations.  The plaintiffs are siblings and are both residents of Connecticut.  Am. Compl. at 1, ¶¶ 2, 3.  Winer is also a Connecticut resident, while Patriot is a Connecticut limited liability company that is licensed to operate an automobile dealership.  Id. at 1, ¶¶ 4, 5.

At some point before October 2016, Patriot and Winer entered into an arrangement whereby Winer would operate one of Patriot's car dealerships.  Id. at 2, ¶ 10.  Although Winer operated the dealership under Patriot's name and license, Winer made all operational decisions, invested in inventory, and assumed all business risks.  Id. at 2, ¶¶ 10–12.  Patriot did not supervise Winer's operations and had no economic interest in those operations, except for the consideration paid by Winer for permission to operate the dealership.  Id. at 2, ¶ 11.  Patriot permitted Winer to operate the dealership in its name, even though it knew that Winer was not licensed to operate a motor vehicle dealership.  Id. at 2, ¶ 13.

On October 26, 2016, Coralys saw an advertisement on Facebook for a 2008 Subaru Impreza ("the Vehicle") with a sale price of $8,500.  Id. at 3, ¶ 15.  On October

27, 2016, she met with Winer, who identified himself as the owner of Patriot.  Id. at 3, ¶ 16.  Coralys informed Winer that she wanted a car that had a good engine and that did not have any major issues.  Id. at 3, ¶ 17.  After Winer assured her that the Vehicle's engine was in good condition, Coralys paid Winer a $2,000 down payment for the Vehicle, and she completed a credit application to finance the balance of the purchase price.  Id. at 3, ¶¶ 18, 19.

On November 8, 2016, Coralys entered into a retail installment contract for the Vehicle ("the Contract"), with her brother, Francisco, acting as a co-signer for the loan.  Id. at 3, ¶ 22 – 4, ¶ 23.  The Contract listed the plaintiffs as "the Buyers" and Patriot as "the Seller/Creditor."  Id. at 4, ¶ 23.  It set the cash price for the Vehicle at $9,585.17, which included a sales tax of $590.17.  Id. at 4, ¶ 24.  The Contract also contained other charges and fees.  Id. at 4, ¶ 25.  Although the plaintiffs had already paid a down payment of $2,000 for the Vehicle, the Contract credited them with a down payment of only $1,000, resulting in a total amount financed under the Contract of $9,423.17.  Id. at 4, ¶¶ 26, 27.  The Contract was later assigned to United Consumer Finance ("UCF").  Id. at 4, ¶ 29.  In connection with the Contract's assignment to UCF, Winer prepared a purchase order, a consumer loan application, and an automatic loan payment authorization form, and he forged the plaintiffs' signatures on those documents.  Id. at 4, ¶ 30.

Soon after Coralys took delivery of the Vehicle, she discovered that the Vehicle was low on oil.  Id. at 4, ¶ 33.  Coralys refilled the oil.  Id. at 5, ¶ 34.  However, roughly one week later, her mechanic informed her that the Vehicle's oil levels were again low.  Id. at 5, ¶ 35.  On November 25, 2016, Coralys called Winer to tell him that she did not

4

want to keep the Vehicle because the engine was bad.  Id. at 5, ¶ 36.  At Winer's

recommendation, Coralys brought the Vehicle to a Subaru dealership for inspection.  Id.

at 5, ¶ 36.  The inspection revealed that "the turbo feed line was leaking oil, the engine

had a knocking noise, the struts were leaking and needed to be replaced, and the air

conditioner was making noise."  Id. at 5, ¶ 37.  The Subaru dealership estimated that

making these repairs would cost $6,700.  Id.

On Mary 9, 2017, the plaintiffs notified Patriot and Winer of their decision to

revoke acceptance of the Vehicle or, in the alternative, to rescind the Contract.  Id. at 5,

¶ 38.  They further notified the defendants that they could retrieve the Vehicle, which, by

that time, could no longer be driven.  Id.  However, neither Winer nor Patriot refunded

the $2,000 down payment to the plaintiffs.  Id. at 5, ¶ 40.

On April 10, 2017, the plaintiffs initiated the instant action, suing Patriot and

Winer for (1) violations of the Truth in Lending Act; (2) breach of the implied warranty of

merchantability; (3) breach of express warranty; (4) violations of Connecticut's Retail

Installment Sales Finance Act ("RISFA"); (5) civil forgery; and (6) violations of

Connecticut's Unfair Trade Practices Act ("CUTPA").  See generally Compl. at 1, ¶ 1;

Am. Compl. at 1, ¶ 1.  The plaintiffs seek actual damages; statutory damages of $2,000;

double damages pursuant to section 52-565 of the Connecticut General Statutes;

statutory and common law punitive damages; attorney's fees and costs; and revocation

of acceptance of the Vehicle or, in the alternative, an order rescinding the Contract and

returning the $2,000 down payment.  Am. Compl. at 12.

**III.    STANDARD OF REVIEW**

    A.    <u>Rule 12(b)(6) Failure to State a Claim</u>

Federal Rule of Civil Procedure 8(a) requires a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a).  To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), that plain statement must allege facts sufficient to state a plausible claim for relief.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  While this plausibility standard does not require probability, it is not satisfied by "a sheer possibility that a defendant has acted unlawfully" or by facts that are "merely consistent with a defendant's liability."  <u>Id.</u> (internal quotation marks omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all material factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  <u>Crawford v. Cuomo</u>, 796 F.3d 252, 256 (2d Cir. 2015).  However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Iqbal</u>, 556 U.S. at 678 (internal quotation marks omitted).  In those instances, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u>  "[O]nly the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken" may be considered by the court.  <u>Samuels v. Air Transp. Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993).

B.   <u>Rule 56 Summary Judgment</u>

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Wright v. N.Y. State Dep't of Corr.</u>, 831 F.3d 64, 71–72 (2d Cir. 2016). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," <u>Anderson</u>, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000).  "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Cross Commerce Media, Inc. v. Collective, Inc.</u>, 841 F.3d 155, 162 (2d Cir. 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  <u>LaFond v. Gen. Physics Servs. Corp.</u>, 50 F.3d 165, 175 (2d Cir. 1995).  "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted."  <u>F.D.I.C. v. Great Am. Ins. Co.</u>, 607 F.3d 288, 292 (2d Cir. 2010) (quoting <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)).  On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact.  <u>Cortes v. MTA N.Y. City Transit</u>, 802 F.3d 226, 230 (2d Cir. 2015) (quoting <u>R.B. Ventures, Ltd. v. Shane</u>, 112 F.3d 54, 59 (2d Cir. 1997)).

**IV.     DISCUSSION**

In his Motion to Dismiss, Winer seeks to dismiss the plaintiffs' claim of civil

forgery.  <u>See</u> Mot. to Dismiss at 1.  In his Motion for Summary Judgment, Winer seeks

summary judgment as to the plaintiff's breach of warranty claims; their RISFA claim;

and certain issues concerning their CUTPA claims.  <u>See</u> Mot. for Summ. J. at 1.  The

court will begin by addressing Winer's Motion to Dismiss.

A.     <u>Motion to Dismiss</u>

Winer seeks to dismiss the plaintiffs' civil forgery claim, which alleges that Winer

violated section 52-565 of the Connecticut General Statutes by signing the plaintiffs'

names on certain forms and then presenting those forms as genuine to UCF in order to

complete the sale of the Vehicle.  <u>See</u> Mot. to Dismiss at 1; Am. Compl. at 10, ¶¶ 40,

41.  In particular, Winer argues that dismissal is warranted because the plaintiffs' have

not alleged that they suffered injury from the forgery.  <u>See</u> Defendants' Memorandum of

Law in Support of Motion to Dismiss ("Defs.' Mem. in Mot. to Dismiss") (Doc. No. 33) at

3.

Section 52-565 provides that "[a]ny person who falsely makes, alters, forges or

counterfeits any document, or knowingly utters, as true, any document falsely made,

altered, forged or counterfeited, shall pay double damages to any party injured thereby."

Conn. Gen. Stat. Ann. § 52-565.  Although the Connecticut Supreme Court has not

expressly defined the elements of a civil forgery action, Connecticut lower courts have

interpreted the statute's reference to "any party injured" as requiring plaintiffs to prove

that they suffered an actual injury as a result of the forgery.  <u>See</u> <u>Criscuolo v. Shaheen</u>,

46 Conn. Supp. 53, 58–60 (Super. Ct. 1999).  Accordingly, these courts have dismissed

civil forgery claims when the alleged harm is too speculative, such as when the alleged

8

injury was merely the possibility of increased tax liabilities, see Future Indus. of Am., Inc. v. Gallagher-Farren, No. CV010072788S, 2003 WL 1787966, at *2 (Conn. Super. Ct. Mar. 24, 2003), or the potential loss of commission payments that the plaintiff might have secured in the future, see Lettman v. Lovett, No. CV156062936S, 2018 WL 3966706, at *3 (Conn. Super. Ct. Aug. 1, 2018).  On the other hand, Connecticut courts have recognized that actual injury occurs when a plaintiff pays money on the basis of forged documents.  See Criscuolo, 46 Conn. Supp. at 59 (noting that, if the plaintiff made a payment to the defendant in reliance on a forged note, "the plaintiff obviously [would] ha[ve] actual injury").

In this case, the Amended Complaint plausibly alleges that the plaintiffs suffered concrete, non-speculative injuries as a result of Winer's forgery of certain documents. In particular, the plaintiffs allege that, as a result of entering into the Contract, they lost the $2,000 that they had paid as a down payment for a vehicle that no longer works. See Am. Compl. at 5, ¶¶ 39, 40.  They further allege that they have struggled to purchase a replacement vehicle because of "the retention of the down payment amount and the debt that was claimed by UCF."  Id. at 11, ¶ 43.  These hardships flow from a transaction was allegedly facilitated by Winer's forgery.  Specifically, the Amended Complaint alleges that Winer forged the plaintiffs' signatures on "a purchase order, consumer loan application[,] and automatic loan payment authorization forms," and then "knowingly presented [these documents] as genuine to UCF in order to complete the transaction" for the Vehicle.  Id. at 10, ¶ 40.  Taken together, these allegations plausibly state a claim for civil forgery under section 52-656.

In arguing that the plaintiffs have failed to state a claim under section 52-565,

Winer rests heavily on the observation that there are no allegations of injury in the

section of the Amended Complaint titled "Civil Forgery Count."  See Defs.' Mem. in Mot.

to Dismiss at 4 ("Thus, since the Plaintiffs' [sic] fail to allege actual injury in Count F,

Civil Forgery, they fail to state a claim upon which relief can be granted and count F

should be dismissed."); Defs.' Reply in Mot. to Dismiss at 2 ("[T]he Civil Forgery Count

does not specifically allege specific injury as required by Connecticut General Statutes

Section 52-565 . . . .").  However, the Second Circuit has held that a complaint should

not be "parsed piece by piece to determine whether each allegation, in isolation, is

plausible."  Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret.

Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 732 (2d Cir. 2013) (quoting

Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)).  Instead, when

deciding whether a claim satisfies the plausibility standard at the motion to dismiss

stage, "courts must undertake a careful and holistic evaluation of [the] complaint's

factual allegations before concluding that they do not support a plausible inference that

the plaintiff is entitled to relief."  Id. (quoting Branden, 588 F.3d at 598) (internal

quotation marks omitted).  Thus, it does not matter that the plaintiffs' allegations of injury

are not found in the same section of the Amended Complaint in which the plaintiffs

assert their civil forgery claim.  The Amended Complaint, as a whole, plausibly alleges

that the plaintiffs suffered injury as a result of Winer's forgery.

     Accordingly, Winer's Motion to Dismiss is denied.

     B.   Motion for Summary Judgment

     Winer seeks summary judgment as to (1) the plaintiffs' claims for breach of

implied and express warranty; (2) their claim that Winer violated Connecticut's Retail

Installment Sales Finance Act ("RISFA"); and (3) certain issues concerning their claim that Winer violated Connecticut's Unfair Trade Practices Act ("CUTPA"). See generally Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defs.' Mem. in Mot. for Summ. J.") (Doc. No. 64). The court will address each of these arguments in turn.

### 1.   Breach of Warranty

Winer advances two arguments for why he is entitled to summary judgment on the plaintiffs' breach of warranty claims. The first concerns whether Winer qualifies as a "merchant" under Connecticut law. See id. at 3–4. The second concerns whether the plaintiffs were required to disclose expert testimony relating to the condition of the Vehicle's engine. See id. at 2–3.

### a.   Whether Winer is a "Merchant"

Winer argues that summary judgment is warranted as to the plaintiffs' claim for breach of the implied warranty of merchantability because the plaintiffs did not allege in their Amended Complaint that Winer was a "merchant," as defined by section 42a-2-104 of the Connecticut General Statutes. See id. at 3–4. More specifically, Winer notes that, under Connecticut law, a seller of goods may be liable for breach of the implied warranty of merchantability if he is "a merchant with respect to goods of that kind." Conn. Gen. Stat. 42a-2-314(1).   A "merchant," in turn, is defined as a person (1) "who deals in goods of the kind" at issue in the challenged transaction; (2) who "otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction"; or (3) to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."  Conn. Gen. Stat. §

42a-2-104(1).  Winer argues that he is entitled to summary judgment because the Amended Complaint does not expressly label Winer as "a merchant."  <u>See</u> Defs.' Mem. in Mot. for Summ. J. at 4.

It appears, however, that Winer has confused the standards for a motion to dismiss and a motion for summary judgment.  Unlike in a Rule 12(b)(6) motion, Winer cannot succeed at the summary judgment stage by attacking the sufficiency of the plaintiffs' Amended Complaint.  <u>See</u> <u>Savitsky v. Mazzella</u>, 59 F. App'x 432, 434 (2d Cir. 2003) (finding error where the district court's summary judgment analysis focused on the sufficiency of the plaintiff's complaint).  Instead, Winer, as the moving party, carries the initial burden of adducing evidence to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Wright v. N.Y. State Dep't of Corr.</u>, 831 F.3d 64, 71–72 (2d Cir. 2016).

However, Winer has not come forward with evidence suggesting that he does not qualify as a merchant under section 42a-2-104.  Moreover, even if Winer had offered such evidence, there would still be an issue of material fact as to his status as a merchant in light of Winer's own admissions in his Amended Answer (Doc. No. 19).  As the Second Circuit has explained, "[f]acts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation."  <u>Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.</u>, 440 F.3d 571, 578 (2d Cir. 2006).  In this case, Winer's Amended Answer admits the following paragraphs of the plaintiffs' Complaint:

> 10. Some time prior to October, 2016, Patriot Auto and Winer entered into an arrangement pursuant to which Winer would operate a car dealership ostensibly as Patriot Auto, even though Winer made all operational

decisions, invested in inventory, and would either profit or lose money depending upon the success of the operation.

11. Patriot Auto maintained no supervisory role in Winer's operations and had no economic interest in the transactions entered into by Winer other than the consideration paid by Winer for permitting him to operate a dealership at Patriot Auto's location.

12. Winer did not have a license to operate a dealership and operated his business in Patriot Auto's name and under Patriot Auto's license.

13. Patriot Auto permitted Winer to operate in its name even though it knew that Winer did not have a license to operate a motor vehicle dealership.

These binding admissions provide a sufficient factual basis from which a reasonable jury could conclude that Winer was a person who deals in cars and, therefore, "a merchant" as defined by Connecticut breach of warranty law.  See, supra, at 11.

b.    Whether Expert Testimony Is Required

Winer also argues that summary judgment is warranted as to the plaintiffs' breach of warranty claims because the plaintiffs failed to disclose expert testimony relating to the condition of the Vehicle's engine.  See Defs.' Mem. in Mot. for Summ. J. at 2–3.  More specifically, Winer contends that the plaintiffs can only succeed on these claims if they can prove that the Vehicle had a "bad" engine at the time of the sale.  Id. at 3.  Winer further asserts that an assessment of the engine's condition can only be made with the help of "the technical and specialized knowledge of a trained automobile expert."  Id.  From this conclusion, Winer reasons that the plaintiffs are required to disclose expert testimony under Rules 701 and 702 of the Federal Rules of Evidence, and that their failure to do so warrants summary judgment in Winer's favor.  See id. at 2–3.

To begin, the court notes that Winer is mistaken in his reliance on the Federal Rules of Evidence.  Because the court is considering the plaintiffs' state law claims for

breach of warranty under its supplemental jurisdiction, it applies state substantive law. See Rounseville v. Zahl, 13 F.3d 625, 629 n.1 (2d Cir. 1994) ("[T]he District Court is bound to apply state law when ruling on a pendent state claim.").  The court therefore looks to Connecticut law, rather than the Federal Rules of Evidence, to determine when expert testimony is required to prove breach of warranty.  See Ellis v. YMCA Camp Mohawk, Inc., 615 F. App'x 697, 698 (2d Cir. 2015) (explaining that, "[i]n a diversity action, whether expert testimony is required is a matter of state law, whereas the admissibility of a given expert witness is governed by the Federal Rules of Evidence"); Great N. Ins. Co. v. 5K Dev., LLC, No. 3:16-CV-01359 (MPS), 2018 WL 4211325, at *5 (D. Conn. Sept. 4, 2018) (applying Connecticut law to determine whether summary judgment was warranted by the plaintiff's failure to disclose expert testimony as to the duty, breach, and causation elements of its negligence claim).

As the Connecticut Supreme Court has explained, "[a]lthough expert testimony may be helpful in many instances, it is required only when the question involved goes beyond the field of ordinary knowledge and experience of the trier of fact." State v. Buhl, 321 Conn. 688, 700 (2016) (internal quotation marks omitted).  Thus, "[t]he trier of fact need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on those matters." Id. (internal quotation marks omitted).  Instead, the necessity of expert testimony is "dependent on whether the issues are of sufficient complexity to warrant the use of the testimony as assistance to the court." Id. (internal quotation marks and alterations omitted).  Ultimately, the question of whether expert testimony is required is "a legal determination," Doe v. Hartford Roman Catholic Diocesan Corp., 317 Conn. 357, 373 (2015), that courts must

14

make on "a case-by-case basis," <u>Buhl</u>, 321 Conn. at 700 (internal quotation marks omitted).

In this case, the court must decide whether the plaintiffs need expert testimony regarding the Vehicle's engine performance in order to prove their breach of warranty claims.  To succeed on a claim for breach of the implied warranty of merchantability, the plaintiffs must prove that the Vehicle was not "merchantable."  Conn. Gen. State. § 42a-2-314(1).  A good is merchantable when it is "fit for the ordinary purposes for which such goods are used."  Conn. Gen. State. § 42a-2-314(2)(c).  The ordinary purpose of motor vehicles is "normal and reliable driving."  <u>Alexis v. PMM Enterprises LLC</u>, No. 3:17-CV-1622 (MPS), 2018 WL 5456491, at *4 (D. Conn. Oct. 29, 2018); <u>James v. Lopez Motors, LLC</u>, No. 3:16-CV-835 (VLB), 2018 WL 1582552, at *5 (D. Conn. Mar. 31, 2018).  Similarly, for the plaintiffs to succeed on a claim for breach of express warranty, they must prove that the Vehicle did not conform to Winer's affirmative assurances that "the Vehicle's engine was in good condition."  Am. Compl. at 3, ¶ 18; <u>see also</u> <u>Alexis</u>, 2018 WL 5456491, at *4 ("A seller creates an express warranty through 'any affirmation of fact or promise' or 'description of the goods' that becomes part of the basis of the bargain.") (quoting Conn. Gen. Stat. § 42a-2-313(1)(a)-(b)).

Such factual determinations, however, are "not so far outside the ordinary knowledge and experience of jurors so as to require expert testimony."  <u>Ciarlelli v. Romeo</u>, 46 Conn. App. 277, 284 (1997).  Connecticut lower courts have credited jurors with the ability to determine when different car parts are defective, including a vehicle's air bag, seat belts, and brakes.  <u>See</u> <u>Vaccarelli v. Ford Motor Co.</u>, No. CV990153308, 2001 WL 862643, at *2–4 (Conn. Super. Ct. July 6, 2001) (reviewing this case law).

The ordinary juror's knowledge similarly encompasses the factual determination at issue in this case, namely, whether the Vehicle was unfit for normal and reliable driving because it had a faulty engine that, inter alia, leaked oil.  Such a determination does not involve "technically complex issues" relating to engine mechanics.  Buhl, 321 Conn. at 701 (internal quotation marks and alterations omitted).  Instead, it turns on whether the Vehicle's performance accords with commonly shared expectations about how a vehicle with a "good engine" should operate.  Cf. Latham & Assocs., Inc. v. William Raveis Real Estate, Inc., 218 Conn. 297, 303 (1991) (concluding that, where the purchased "computer software did not perform in accordance with the expectations of the parties," the plaintiff was not required to submit "expert testimony detailing the cause of the software failure" to prove breach of warranty).  A reasonable jury could conclude that a vehicle's engine was malfunctioning where, as the plaintiffs allege here,[1] the vehicle in question (1) leaked oil, (2) had an engine that emitted a knocking noise, (3) had struts that were leaking and needed to be replaced, (4) had an air conditioner that made noise, and (5) could no longer be driven five months after being sold to the plaintiffs.  See Am. Compl. at 5, ¶¶ 37, 38.  The court therefore concludes that, as a matter of law, the plaintiffs do not need expert testimony to prove their breach of warranty claims.  While it might have strengthened the plaintiffs' proof, it is not required.

---

[1] The plaintiffs do not come forward with evidence to support their claims that the Vehicle's engine was malfunctioning at the time of the sale.  This omission, however, is not fatal because Winer, who carries the initial burden of proof as the party moving for summary judgment, does not come forward with any evidence relating to the condition of the engine.

2.      Retail Installment Sales Finance Act

Winer argues that summary judgment is warranted as to the plaintiffs' RISFA

claim because the plaintiffs have already obtained RISFA's remedies when they

reached a settlement agreement with UCF, the assignee of the Contract.  See Defs.'

Mem. in Mot. for Summ. J. at 4–5.  More specifically, the plaintiffs' RISFA claim against

Winer seeks the rescission of the Contract.  See id.; see also Am. Compl. at 10, ¶ 39.

As Connecticut courts have explained, the remedy of rescission aims to "restor[e] the

parties to their respective positions prior to the contract" by requiring "the seller to

refund the amounts paid by the buyer for the goods and the buyer to return the goods to

the seller."  Barco Auto Leasing Corp. v. House, 202 Conn. 106, 113 (1987).  In this

case, the plaintiffs seek the return of their $2,000 down payment on the Vehicle.  See

Am. Compl. at 10, ¶ 39.  However, Winer points out that UCF has already agreed to

rescind the Contract and to pay $2,000 to the plaintiffs as part of its settlement

agreement with the plaintiffs.  See Defs.' Mem. in Mot. for Summ. J. at 4–5.  Winer

argues that, because the plaintiffs have fully recovered their $2,000 down payment,

Winer cannot be liable for damages under RISFA.  See id.

In making this argument, Winer appears to be invoking the "one satisfaction rule,"

although he does not identify this doctrine by name or, indeed, cite to any case law in

support of his argument.  This rule, which is also known among Connecticut courts as

"the rule precluding double recovery," is "a simple and time-honored maxim that a

plaintiff may be compensated only once for his just damages for the same injury."

Mahon v. B.V. Unitron Mfg., Inc., 284 Conn. 645, 663 (2007) (internal alterations and

quotation marks omitted).  While the one satisfaction rule does not prevent plaintiffs

from "suing multiple defendants, either jointly or separately, for injuries for which each is

17

liable," it bars double recovery from multiple defendants for a single harm.  Gionfriddo v. Gartenhaus Cafe, 211 Conn. 67, 71–72 (1989).  Accordingly, summary judgment may be appropriate when the plaintiff has already been fully compensated for his losses. See Haynes v. Yale-New Haven Hosp., 243 Conn. 17, 22–23 (1997) (upholding the trial court's decision to grant the defendants' motion for summary judgment on the basis of the one satisfaction rule).

In this case, however, there exist issues of fact as to whether the plaintiffs' RISFA claim is precluded by the one satisfaction rule.  Although Winer equates the $2,000 down payment that the plaintiffs seek in their RISFA claim with the $2,000 settlement payment that the plaintiffs obtained from UCF, it is not evident from the record that such an assumption is warranted.  The settlement agreement, which Winer attaches to his Motion for Summary Judgment, does not specify that UCF's $2,000 settlement payment constitutes the return of the plaintiffs' down payment on the Vehicle. See Exhibit B ("Settlement Agreement"), Defs.' Mot. for Summ. J. (Doc. No. 64). Instead, the agreement merely provides that UCF will pay the plaintiffs $2,000 in exchange for, inter alia, the plaintiffs' promise to "forego pursuit of claims against [UCF] relating to or arising directly or indirectly out of the Contract, Vehicle, Debt, or the Action."  Settlement Agreement at 1, 2.  Thus, the $2,000 settlement payment was consideration not only for resolving any RISFA claims that the plaintiffs might have brought against UCF, but for resolving all claims that the plaintiffs might have brought against UCF in connection with the sale of the Vehicle.  For example, Winer does not dispute the plaintiffs' assertion that they could have sued UCF for breach of warranty and violations of CUTPA, thereby exposing UCF to the risk that it would have to pay the

18

plaintiffs not only actual damages, but also punitive damages and attorney's fees and costs.  See Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment ("Pls.' Opp'n in Mot. for Summ. J.") (Doc. No. 67) 5–6.  As Winer has not provided additional evidence suggesting that the parties intended the $2,000 settlement payment to serve as the return of the plaintiff's down payment, there is an issue of material fact as to whether the plaintiffs fully recovered their down payment through their settlement with UCF.  Accordingly, summary judgment on the plaintiffs' RISFA claim is not warranted.

### 3.     Connecticut Unfair Trade Practices Act

Finally, Winer advances three arguments for why summary judgment is warranted as to certain issues relating to the plaintiffs' CUTPA claims.  See Defs.' Mem. in Mot. for Summ. J. at 5–6.  Two of these arguments repeat arguments that this court has already addressed.  Specifically, Winer argues that (1) the plaintiffs cannot seek rescission of the Contract under CUTPA because they already obtained the remedy of rescission through their settlement agreement with UCF; and (2) the plaintiffs were required to disclose expert testimony regarding the condition of the Vehicle's engine in order to prove that Winer violated CUTPA by misrepresenting the condition of the Vehicle.  See id. at 6.  Winer himself appears to recognize the redundancy of these arguments, as his brief does not elaborate on these arguments in the context of CUTPA, but instead directs the court's attention to identical arguments made with respect to the plaintiffs' RISFA claim and breach of warranty claims.  See id. ("[A]s stated in the Argument Section II., since the Plaintiff's [sic] have failed to disclose an expert to testify as to the condition of the engine at the time of purchase the Plaintiffs cannot therefore prove the CUTPA violations); id. ("[A]s stated above in Argument

Section IV.[,] the Plaintiffs had already received a rescission of the Contract from the Lender UCF.").

Thus, as the court has already determined that these two arguments are without merit, see, supra, at 13–19, it will only address Winer's third and final contention, namely, that summary judgment is warranted as to the plaintiffs' claim that Winer violated CUTPA by selling the Vehicle for more than the advertised price. See Defs.' Mem. in Mot. for Summ. J. at 5–6. More specifically, the plaintiffs assert in their Amended Complaint that Winer sold them the Vehicle for more than the price that Coralys saw advertised on Facebook. Am. Compl. at 3, ¶ 15, 6, ¶ 34. In doing so, the plaintiffs argue, Winer contravened Connecticut Agency Regulation § 42-110b-28(b)(1) ("the Regulation"), which makes it a per se violation of CUTPA for car dealerships to sell vehicles for more than their advertised price. See id. at 10, ¶ 42; see also Emmanuelli v. Merriam Motors, Inc., No. X04CV020126869S, 2003 WL 22080496, at *2 (Conn. Super. Ct. Aug. 25, 2003) ("A violation of the cited state regulation, by its very wording, would be a per se violation of CUTPA."). In his Motion for Summary Judgment, Winer argues that he did not violate the Regulation because the Facebook advertisement seen by Coralys was posted on the Facebook account of Brendan Smith ("Smith"), rather than on Winer's Facebook account. See Defs.' Mem. in Mot. for Summ. J. at 5–6.

The Regulation prohibits car dealers from selling motor vehicles that are not "in accordance with any terms or conditions which the dealer has advertised, including, but not limited to, the advertised price." Conn. Agencies Regs. § 42-110b-28(b)(1). The Regulation broadly defines an "advertisement" as "any oral, written or graphic statement made by a new car dealer or used car dealer in any manner in connection with the

20

solicitation of business and includes, but is not limited to, statements and representations made in a newspaper or other publication or on radio or television or contained in any notice, handbill, sign, billboard, poster, bill, circular, brochure, pamphlet, catalogue or letter."  Conn. Agencies Regs.  42-110b-28(a)(3).  Although there is little case law interpreting the Regulation's definition of "advertisement," Connecticut lower courts have held that car dealers are only liable under the Regulation for advertising statements that they themselves made.  See <u>Valencia v. Crabtree Imports, Inc.</u>, No. X04CV020103613S, 2004 WL 424499, at *2 (Conn. Super. Ct. Feb. 24, 2004) (finding that the defendant car dealer did not violate the Regulation because the car manufacturer, not the dealership, was responsible for creating the advertisement at issue); <u>see</u> <u>also</u> Conn. Agencies Regs. §  42-110b-28(a)(3) (defining an "advertisement" as "[a] statement <u>made by</u> a new car dealer or used car dealer") (emphasis added).

In this case, there remain issues of material fact as to whether the advertised price that Coralys saw on Facebook was a statement made by Winer.  The Facebook post that Coralys saw on Smith's Facebook account contained a photograph of the Vehicle, text describing the Vehicle, and an advertised price of $8,500.  <u>See</u> Defs.' Exhibit A (Doc. No. 64) at 3.  In his Deposition, Winer testified that he originally posted the photograph of the Vehicle on his own Facebook account, and that Smith, who is the son of Winer's girlfriend, then reposted this photograph on his Facebook account.  <u>See</u> Plaintiffs' Exhibit 1 ("Winer's Dep.") (Doc. No. 67-2) at 5:23, 7:10–16.  Although Winer acknowledges that he was the original source for the photograph of the Vehicle that Coralys ultimately saw, he claims that he did not advertise the Vehicle's price in his

original post of the Vehicle.  See id. at 8:8–8:14.  A reasonable jury could infer from this testimony that Smith, rather than Winer, added the $8,500 price tag when he reposted Winer's original Facebook post regarding the Vehicle.  However, a reasonable jury could also conclude that the $8,500 price tag actually came from Winer, not Smith, based on Winer's testimony that he originally advertised the Vehicle on his Facebook account, that Smith reposted Winer's original post, that Smith was the son of Winer's girlfriend, and that Smith's repost advertised the Vehicle for $8,500.  Thus, summary judgment is not warranted because there remain issues of material fact as to whether the advertised price for the Vehicle that Coralys saw on Facebook came from Winer, Smith, or some other third party.

  Nor can Winer succeed on his Motion for Summary Judgment by claiming that he never gave Smith permission to repost his original Facebook post regarding the Vehicle. See Defendants' Reply in Support of Motion for Summary Judgment ("Defs.' Reply in Mot. for Summ. J.") (Doc. No. 68) at 4–5.  There is no evidence in the record that Winer implicitly or explicitly prohibited Smith from reposting Winer's advertisement of the Vehicle.  On the other hand, it is general public knowledge that a user's Facebook posts can be reposted by others on Facebook.  See State v. Buhl, 321 Conn. 688, 700–01 (2016) (holding that the public accessibility of a Facebook user's profile is common knowledge in light of "[t]he prevalence of Facebook use in American society"); id. at 700 (concluding that "elementary Facebook concepts" fall within "the ordinary knowledge and experience of an objective trier of fact") (internal quotation marks omitted).  Thus, notwithstanding Winer's testimony that he never expressly authorized Smith's reposting,

a reasonable jury could conclude that Winer knew that Smith or other Facebook users might repost his advertisement of the Vehicle.

Thus, in light of these existing issues of fact, summary judgment is not warranted as to the plaintiffs' claim that Winer violated CUTPA by selling the Vehicle for more than the advertised price.

## V.    CONCLUSION

For the foregoing reasons, Winer's Motion to Dismiss (Doc. No. 33) and his Motion for Summary Judgment (Doc. No. 64) are both **DENIED**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 7th day of January, 2019.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge