UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CORALYS NEGRON and<br>FRANCISCO NEGRON,<br>    Plaintiffs, | : <br> : <br> : <br> : | CIVIL CASE NO.<br>3:17-cv-583 (JCH) |
| v. | : <br> : | SEPTEMBER 17, 2019 |
| PATRIOT AUTO SALES, LLC and<br>JASON WINER,<br>    Defendants. | : <br> : <br> : | |

**RULING ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND POST-JUDGMENT INTEREST**

**I.     INTRODUCTION**

Following judgment in their favor, plaintiffs Coralys and Francisco Negron have moved for an award of attorney's fees in the amount of $36,792 and an order for post-judgment interest. See Motion for Attorney's Fees and Post-judgment Interest (Doc. No. 93), at 1; Memorandum of Law in Support of Motion for Attorneys' Fees and Post Judgment Interest ("Mot. for Attys' Fees") (Doc. No. 93-1). Defendant Jason Winer ("Winer") opposes that Motion. See Memorandum in Opposition ("Def.'s Opp.") (Doc. No. 96).

For the reasons set forth below, the Motion for Attorneys' Fees and Post-Judgment Interest is GRANTED in part.

**II.     BACKGROUND**

Coralys and Francisco Negron (collectively, "the Negrons") initiated this action in connection with the sale of a used car in 2017. See Complaint (Doc. No. 1). To briefly summarize the facts, Coralys Negron purchased a vehicle from Winer in 2016. See Bench Trial Ruling and Renewed Motion for Judgment ("Bench Trial Ruling") (Doc. No.

86). Although she was led to believe the cash price for the vehicle was $8,500, the purchase order and other documentation set that price at $8,995. Id. at 4 (citing Pl.'s Ex. 2). In addition, the court found that Coralys's signatures were forged in certain places on the Purchase Order, including paragraphs providing that the vehicle was sold "as is," with no implied warranties. Id. at 6 (citing Pl.'s Ex. 4; Pl.'s Ex. 2). Contrary to Winer's representations, there were several problems with the vehicle, including that the oil feed line was leaking, the engine was making a knocking noise, the struts were leaking, and the air conditioner needed to be replaced. Id. at 7 (citing Pl.'s Ex. 8).

The Negrons brought several claims against Winer, including: violations of the Truth in Lending Act ("TILA"); breach of the implied warranty of merchantability under section 42a-2-314 of the Connecticut General Statutes and the Magnuson-Moss Warranty Act ("Magnuson-Moss"), 15 U.S.C. § 2310(d); breach of express warranty; violations of Connecticut's Retail Installment Sales Finance Act ("RISFA"); civil forgery; and violations of Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat § 42-110g(d). Id. at 8. They asserted the same causes of action—except civil forgery—against Patriot Auto Sales, which permitted Winer to operate one of its dealerships. Id. In May 2019, the court awarded a total of $7,132.89 to plaintiffs, for which Winer and Patriot Auto Sales are jointly and severally liable, for breach of the implied warranty of merchantability, violation of RISFA, and violation of CUTPA. Id. at 36.

Plaintiffs now seek attorney's fees and post-judgment interest pursuant to CUTPA and Magnuson-Moss. See Mot. for Attys' Fees at 2. Winer opposes that Motion, arguing that he is not liable for fees that are not related to the CUTPA claim against him. Def.'s Opp. at 3. Winer further argues that the billable rate for paralegals,

2

as calculated by the plaintiffs, is unreasonable, id. at 5, and that the court should exclude the legal fees of Attorney Mahoney as duplicative, id. at 6.

## III. DISCUSSION

### A. Connecticut Unfair Trade Practices Act

#### 1. Work related to the CUTPA claim

Coralys and Francisco Negron seek attorneys' fees under Magnuson-Moss and CUTPA. Pursuant to CUTPA,

> In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery.

Conn. Gen. Stat. § 42-110g(d). Plaintiffs bear the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The district court should provide a "concise but clear explanation of its reasons for the fee award." Id.

As Connecticut courts have explained, attorneys' fees are "integral to effecting" the policy behind CUTPA, "namely, to encourage litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices." Gill v. Petrazzuoli Bros., Inc., 10 Conn. App. 22, 33 (1987); see also Fabri v. United Techs. Int'l, Inc., 193 F. Supp. 2d 480, 486 (D. Conn. 2002) (explaining that "the purpose of the fee-shifting statute" is "to encourage the prosecution of meritorious claims for violation of the substantive provisions of CUTPA.")

An award of fees under CUTPA "is committed to the discretion of the trial court." Fabri v. United Techs. Int'l, Inc., 387 F.3d 109, 128 (2d Cir. 2004). A court can award

fees under CUTPA "only for those expenses that were related to the prosecution of the CUTPA claim" or claims that are factually interrelated. Fabri, 387 F.3d at 130 (quoting Jacques All Trades Corp. v. Brown, 57 Conn. App. 189 (2000)).

Plaintiffs have submitted, as Exhibit A to their Motion for Attorneys' Fees and Post-judgment Interest, a Pre-Bill Worksheet listing the actions for which counsel billed in this case. See Mot. for Atty's Fees, Ex. A. Winer argues that several line items on the Pre-Bill Worksheet should not be included in the total attorney's fees because they are not sufficiently related to the CUTPA claim. The court agrees in part. First, Winer identifies several items related only to the prosecution of the Motion for Default and Judgment against Patriot Auto Sales. See generally Def.'s Opp. at 4 (citing Def.'s Opp., Exs. G-I). The facts underlying the Motion for Default—that Patriot Auto Sales failed to appear in this civil case—are unrelated to the facts that give rise to the underlying violation—that Winer misled the Negrons about the price of the car. Hours billed for attorney work on the Motion for Default against Patriot Auto Sales are not reasonably "related to the prosecution of the CUTPA claim" against Winer. Thus, the court deducts $3,422.50 from the total amount sought. Fabri, 387 F.3d at 130.

Winer also argues that several items related to amending the Complaint to add forgery claims should not be included. The court found that the plaintiffs failed to meet their burden to establish by a preponderance of the evidence that Winer was the party who committed the forgery in question. See Bench Trial Ruling at 17 (reasoning that the plaintiffs failed to present evidence that Winer was the only person to handle the relevant documents or that the forged signatures matched his handwriting). The court ultimately concluded that Winer violated CUTPA by advertising the car for $8,500 but

4

selling it to the plaintiffs for $8,995. Id. at 24 (citing section 42-110b-28(b)(1) of the Connecticut Agencies Regulations, which makes it a per se violation of CUTPA for car dealers to sell vehicles for more than their advertised price). This finding was not factually related to the civil forgery claim, which was based on a distinct set of allegations. Because the court can only award attorney's fees pursuant to CUTPA for work reasonably performed and related to the CUTPA claim, it will not award fees for work solely related to the civil forgery claim. Therefore, the court deducts $710 dollars from the total amount sought from Winer.[1]

However, the court disagrees with Winer's arguments that items identified in his Exhibits A and B are not sufficiently related to the CUTPA claim. Exhibit A includes several entries that describe the Negrons' counsel meeting with their clients or drafting documents that applied to the litigation in general. See Def.'s Opp., Ex. A (listing, inter alia, "conf w/ Coralys Negron and Carol;" "telephone interview of Francisco Negron;" "prepare demand letter;" "review and evaluate file and readiness for revocation / litigation"). This work enabled counsel to understand the facts underlying the interrelated claims in the lawsuit including the CUTPA claim. Exhibit B includes entries that include "research into the current operator of Patriot [Auto]" and conversations with the client regarding the vehicle. Def's. Opp, Ex. B. This general research was also intended to obtain more information about the CUTPA claim or facts that are interrelated

---

[1] The court notes that it does not deduct the full amount Winer argues relate only to the forgery count. Specifically, in Winer's Ex. D, Winer has identified two items related to general casework, such as reviewing a request for extension, replying to discovery e-mails from Winer's counsel, and scheduling depositions. Such work is reasonably interrelated to the CUTPA claim, and the court does not deduct it from the total amount sought.

5

with that claim.  See Fabri, 387 F.3d at 109.  That the research in question ultimately supported multiple legal theories does not mean it must be subtracted from the total amount of attorneys' fees under CUTPA.  See Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 195 (1986) (concluding, under the Connecticut Uniform Securities Act, that there is "no such rule" that "an award of attorney's fees must automatically be reduced if its recipient fails to prevail on all of his claims"); Bristol Tech., Inc. v. Microsoft Corp., 127 F. Supp. 2d 64, 69 (D. Conn. 2000) (discussing Russell and citing cases that applied its reasoning in CUTPA cases).

Finally, Winer challenges the inclusion of an amount for work not yet done related to enforcing the CUTPA claim.  Attorney Blinn has filed a declaration explaining that he expects to spend three hours reviewing Winer's opposition to the Motion for Attorneys' Fees and collecting on the judgment.  That amount of time is a reasonable estimate of how long it might take an attorney to review the opposition, draft and file a reply, and collect on the judgment.  Further, Connecticut courts have found Attorney Blinn's hourly rate reasonable.  See, e.g., A Better Way Wholesale Autos, Inc. v. Oteng, No. cv-166031616, 2017 WL 481768, at *4 (Conn. Super. Ct. Jan. 3, 2017) (finding Attorney Blinn's fees reasonable in that case based on the quality of his work and the result for his client); A Better Way Wholesale Autos, Inc. v. James Saint Paul, No. CV166031881, 2016 WL 8135391, at *7 (Conn. Super. Ct. Dec. 30, 2016) (same), aff'd sub nom. A Better Way Wholesale Autos, Inc. v. Saint Paul, 192 Conn. App. 245 (2019).  Therefore, the court does not subtract the amount included on the Pre-Bill Worksheet for expected future work.

In conclusion, the court agrees with Winer that some of the items listed in the Pre-Bill Worksheet are not related to the CUTPA claim, and therefore that the fees for those items must be deducted from the total award. It subtracts $710 for work related solely to the civil forgery claim, and $3,422.50 for work related solely to the motion for Default against Patriot Auto Sales. In total, court will subtract $4,132.50 from the amount the Negrons seek.

2. "Reasonableness" of fees

In addition to being factually interrelated to the CUTPA claim, expenses must be "reasonable" in order to justify an award under CUTPA. See Conn. Gen. Stat. § 42-110g(d) (allowing "costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery"). To determine the reasonable value of attorneys' fees, a district court must identify a reasonable hourly rate and use that hourly rate to calculate a "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008). To determine a reasonable hourly rate, the district court "bear[s] in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Id. at 190. Those factors include "the time and labor spent by the attorneys, the novelty and complexity of the legal issues, fees customarily charged in the same locality for similar services, the lawyer's experience and ability, relevant time limitations, the magnitude of the case and the results obtained, the nature and length of the lawyer-client relationship, and whether the fee is fixed or contingent." Schoonmaker v. Lawrence Brunoli, Inc., 265 Conn. 210, 259 (2003).

Winer contests the reasonableness of the fees sought on three grounds. First, he argues that the paralegal hourly rate the Negrons seek is too high and should be set at $125 rather than $150 per hour. Def's. Opp. at 5. Second, he argues that the court should not grant fees for Attorney Mahoney. Id. at 6-7. Finally, he argues that the fees are excessive considering the plaintiffs' lack of success on their forgery or TILA claims, and because the court did not make a finding on whether Winer was in fact responsible for a Facebook ad for the vehicle. Id. at 8-9.

      a.      Paralegal hourly rate

A reasonable hourly rate is determined by the prevailing market rate, which, in Connecticut, typically means "'the billing rates of [equivalent employees in] the District of Connecticut,' even if counsel has its primary offices elsewhere." Schuman v. Aetna Life Ins. Co., 3:15-cv-01006 (SRU), 2017 WL 2662191, at *8 (D. Conn. June 20, 2017) (internal quotation omitted). The Connecticut Supreme Court has "repeatedly held that courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described." Fabri, 387 F.3d (quoting Piantedosi v. Florida, 186 Conn. 275 (1982)).

In GEOMC Co. v. Calmare Therapeutics, Inc., No. 3:14-CV-1222 (VAB), 2018 WL 2390137, at *4 (D. Conn. May 25, 2018), a court in this district accepted the parties' contention that $125 per hour was the in-district rate for a senior paralegal. However, the court ultimately awarded $150 per hour for the paralegal's work, because the firm in question replaced a predecessor and therefore was entitled to slightly higher, out-of-district rates. GEOMC, 2018 WL 2390137, at *6. Winer argues that because the

8

GEOMC court found that $125 per hour is a reasonable rate, the rate for paralegal services should be reduced to $125 per hour in this case.

However, GEOMC does not stand for the proposition that there is a $125 hourly cap for paralegal services in this district. As the Negrons explain, another court in this district has recently approved a $150 hourly rate for paralegals. See Alexis v. PMM Enterprises LLC, No. 3:17-CV-1622 (MPS), 2018 WL 5456491, at *7 (D. Conn. Oct. 29, 2018) ("Two paralegals with hourly rates of $95 and $150 spent 1.6 hours and 5.4 hours on this case. . . . Based on my review of the affidavit and attached time sheets, as well as my familiarity with fee awards in this District and the rates charged in this District by attorneys with similar experience to Plaintiff's counsel, I find that the plaintiff's requested attorneys' fees are reasonable.") (internal quotation omitted). Based on those decisions and this court's familiarity with fee awards, the court concludes that $150 is an appropriate hourly rate for the paralegal in this case.

### b. Fees for an Associate Attorney

Winer also argues that Attorney Brendan Mahoney's fees should be eliminated or reduced in this case, because the proceeding was "not a complicated case which required the billing of an associate." Def.'s Opp. at 7. The court disagrees.

Attorney Mahoney performed several key tasks in this litigation, including drafting the Complaint, see Def.'s Opp., Ex. B; engaging in discovery, see Def.'s Opp., Ex. D; and preparing motions, see Def.'s Opp, Ex. H. Winer argues that Attorney Mahoney's absence at trial signals that this case was not complex enough to warrant two attorneys. However, Winer cites no authority for the proposition that only work performed by attorneys who participated in trial can be recovered. Attorney Mahoney performed a

9

significant amount of work in this matter, at a rate lower than if Attorney Blinn had done the work. That Attorney Mahoney did not appear at trial does not diminish his contribution.

The court also declines to decrease Attorney Mahoney's hourly rate from $275 to $225 per hour. As with the paralegal fees proposed, other courts in this district have already found Mr. Mahoney's hourly rate reasonable. See Alexis, 2018 WL 5456491, at *7 ("Brendan L. Mahoney[ ] spent 15.0 hours on this matter at an hourly rate of $275. . . . I find that the plaintiff's requested attorneys' fees are reasonable."); GEOMC, 2018 WL 2390137, at *5 (finding a $275 hourly rate "commensurate with billable rates in Connecticut" and awarding fees based on that rate to an associate attorney).

### c. "Excessive" Fees

Finally, Winer argues that attorneys' fees of $36,792 are excessive because the plaintiffs failed on their forgery or TILA claims, and because the court did not make a finding on whether Winer was in fact responsible for a Facebook ad for the vehicle. Id. at 8-9.

"Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Hensley, 461 U.S. at 440 (1983). The court has already addressed the forgery claim and agreed that several entries related to work solely on that claim must be deducted from the total award. See supra section B.1.a. The Negrons' TILA claim failed because this court found that there was no basis in the record to conclude that Winer was a creditor within the meaning of TILA. Bench Trial Ruling at 11. It also found, however, that the Negrons' state law claims stemmed from

the same common nucleus of operative fact that underpinned the TILA claim. Id. at 14. The facts underlying the TILA claim were interrelated with the facts underlying the successful CUTPA claim, and thus, the court will not attempt to separate the work performed on each individual legal theory. As the Second Circuit has explained, where counsel's time is "'devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis,' there should be a fee award for all time reasonably expended." LeBlanc-Sternberg v. Fletcher, 143 F.2d 748, 762 (2d Cir. 1998). The fee award need not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit, and the court will not reduce the total fee because of the failure of the TILA claim in this case. See Hensley, 461 U.S. at 440.

Finally, the court need not reduce the fee because it did not find Winer had posted the Facebook ad. Because the court found that Winer had advertised the car for $8,500 by writing that price on the windshield, see Bench Trial Ruling at 24, the source of the Facebook ad is not a dispositive fact that plaintiffs needed to prove in order to prevail on their CUTPA claim. As discussed, plaintiffs do not need to prevail on every contention raised or establish every fact asserted in order to be entitled to an award of fees.

For the reasons discussed by the Negrons in their Motion for Fees, the court finds that the fees are largely reasonable in this case. As the Negrons point out, counsel did a significant amount of work in this matter, including preparing for trial; opposing a motion in limine, a motion to dismiss, and a motion for summary judgment; and undertaking trial. Although they did not prevail on all their claims, the Negrons were awarded punitive damages under CUTPA. Further, attorney's fees are "integral" to

11

CUTPA's policy goal of "encourage[ing] litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices." Gill v. Petrazzuoli Bros., Inc., 10 Conn. App. 22, 33 (1987).  For each of these reasons, the Negrons are entitled to attorneys' fees for litigating this case.

However, as discussed, the court will subtract from the total amount of fees the work done on the civil forgery claims alone, as well as the work done solely to prosecute the Motion for Default against Patriot Auto Sales.

B. <u>Magnuson-Moss Warranty Act</u>

Attorneys' fees are also recoverable under Magnuson-Moss, which provides that a consumer who "finally prevails in any action" against a supplier, warrantor, or service contractor under that act "or under a written warranty, implied warranty, or service contract,"

> may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such an action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

15 U.S.C. § 2310(d)(1)-(2).  Here, plaintiffs were successful on their state-law claim for breach of the implied warranty of merchantability under section 42a-2-314 of the Connecticut General Statutes.  See Bench Trial Ruling at 17-20, 36.  Because the plaintiffs "finally prevailed" in an action brought against a supplier for failure to comply with an obligation under an implied warranty, they are entitled to fees under Magnuson-Moss.  15 U.S.C. § 2310(d)(1)-(2).

12

Winer argues that he is not liable for attorney fees under Magnuson-Moss because section 2310(d)(3) provides that "[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection . . . if the amount in controversy is less than the sum or value of $50,000," and the total amount in controversy was less that amount. Def.'s Opp. at 2. However, as the Negrons point out, paragraph 2310(1)(B) is jurisdictional and governs suits brought in federal district court. Paragraph 2310(d)(3) imposes an amount-in-controversy requirement solely for suits brought under paragraph 2310(1)(B), that is, for suits brought in federal court. Because TILA provided an alternate basis for federal jurisdiction in this case, paragraph 2310(1)(B)'s amount-in-controversy requirement does not apply. See Bench Trial Ruling at 11-14. The rest of Magnuson-Moss does—and, because this court found that Winer had violated Magnuson-Moss, the plaintiffs are entitled to attorneys' fees pursuant to section 2310(d)(2).

### C. Post-Judgment Interest

Winer does not oppose the Negrons' request for post-judgment interest pursuant to section 37-3a of the Connecticut General Statutes. That statute provides that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." Conn. Gen. Stat. § 37-3a. As the Connecticut Supreme Court explained in DiLeito v. County Obstetrics and Gynecology Group, P.C., 310 Conn. 38 (2013), an award under section 37-3a is discretionary and "should be awarded in cases where it is appropriate to compensate the plaintiff for the loss of the use of his or her money." 310 Conn. at 54.

13

The Negrons are entitled to post-judgment interest based on their successful claims for breach of the implied warranty of merchantability, violation of RISFA, and violation of CUTPA.  Winer moved to stay enforcement of the money judgment in May, see Doc. No. 90, and the court denied that Motion in July.  See Ruling (Doc. No. 99) (explaining that an appellant is entitled to a stay of enforcement of a money judgment pending appeal upon the posting of a supersedes bond, and that Winer had neither posed a supersedes bond nor established that the court should waive the bond requirement).  As of September 9, 2019, the Negrons have only been able to recover $1,445.50 in fees.  See Writ of Execution Returned (Doc. No. 105).  In order to ensure that the Negrons obtain their full judgment, including loss of the use of their money, the court will impose post-judgment interest at the statutory rate of ten percent.

## IV. CONCLUSION

For the reasons discussed above, the Negron's Motion for Attorney's Fees is **GRANTED** in part and **DENIED** in part.  The Negrons seek $36,792 in attorneys' fees.  The court will subtract $710 for work related solely to the civil forgery claim, and $3,422.50 for work related solely to the Motion for Default against Patriot Auto Sales.  In total, the court grants $32,659.50 in attorneys' fees to Coralys Negron and Francisco Negron, to be paid by the defendant, Jason Winer.  It also orders the payment of post-judgment interest at a rate of ten percent.

**SO ORDERED.**

Dated this 17th day of September at New Haven, Connecticut.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge